# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BAYVIEW LOAN SERVICING, LLC, *et al.*,

    Plaintiffs,

v.                          CIVIL ACTION NO. 10-1451

LAW FIRM OF RICHARD M. SQUIRE &
ASSOCIATES, LLC, *et al.*,

    Defendants.

## MEMORANDUM

YOHN, J.                                                                           December 13, 2010

       Plaintiffs, Bayview Loan Servicing, LLC ("Bayview") and its wholly-owned subsidiary IB Property Holdings, LLC ("IB"), bring this legal malpractice action against defendants, the law firm of Richard M. Squire & Associates, LLC (the "Squire Firm") and its employee M. Troy Freedman ("Freedman"). Plaintiffs claim that defendants represented them in a foreclosure action; that defendants failed to file a petition to fix the fair value of the relevant property within six months of the foreclosure sale, which is required by statute in order to pursue a deficiency judgment; and that as a result of defendants' failure plaintiffs lost any right to pursue the deficiency they were owed.

       Defendants have filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants request that Counts I-II (breach of fiduciary duty), III (negligent supervision) and V (punitive damages) be dismissed with prejudice, and that Count IV (breach of contract) be dismissed with leave to amend. For the reasons explained below I will deny defendants' motion.

## I. Factual and Procedural Background[1]

Bayview acquired the note and associated mortgage (collectively, the "Mortgage") at the center of this litigation from MetWest Commercial Lender, Inc. ("MetWest"). (Compl. ¶ 13.) The Mortgage represented a loan to an individual, Peter Pugliese, for an original principal amount of $262,500.00, and granted the holder of the Mortgage a lien on certain real property (the "Property") to secure payment. (Compl. ¶¶ 10-11, 13.) Bayview assigned the Mortgage to IB. (Compl. ¶ 13.)

Peter Pugliese defaulted on the Mortgage in July 2007. (Compl. ¶ 17.) Plaintiffs then retained the Squire Firm to commence a foreclosure action against Peter Pugliese (the "Foreclosure Action"). (Compl. ¶ 18.) Plaintiff IB obtained an *in rem* judgment and judgment against Peter Pugliese in the amount of $287,992.56 in the Foreclosure Action on January 24, 2008. (Compl. ¶ 18; Opinion 2.) IB purchased the Property at a sheriff's sale on September 5, 2008. (Compl. ¶ 20.) IB subsequently sold the Property to a third party. (*Id.*)

On December 4, 2008, plaintiffs instructed defendants to seek a deficiency from Peter Pugliese in the amount of $374,998.01. (Compl. ¶¶ 21, 23.) Defendants, on behalf of plaintiffs, filed a lawsuit against Peter Pugliese for the deficiency on March 26, 2009, in the Berks County Court of Common Pleas (the "Deficiency Action"). (Compl. 25, 28.) However, defendants had failed to file a petition to fix fair value within six months of the sheriff's sale, as required under

---

[1] I derive certain facts from the memorandum opinion of President Judge Jeffrey L. Schmehl of the Berks County Court of Common Pleas, dated April 1, 2010, which is attached to plaintiffs' certificate of merit (Certificate of Merit Ex. A ("Opinion")); these facts are included for narrative clarity and I do not base my decision thereon.

2

Pennsylvania law in order to pursue a deficiency, *see* 42 Pa. Cons. Stat. § 8103(a)-(d); the six month period had expired on March 5, 2009. (Compl. ¶ 22.)

On April 27, 2009, Wendy Pugliese filed a petition in the Berks County Court of Common Pleas to mark the judgment against Peter Pugliese in the Foreclosure Action satisfied, released and discharged, based on plaintiffs' failure to file the required petition to fix fair value.[2] (Opinion 3.) In response Freedman sent a letter to President Judge Schmehl, the presiding judge in that action, advising that Bayview had no objection to marking the judgment satisfied, released and discharged. (Compl. ¶ 26; Opinion 7-8.) Plaintiffs did not authorize this letter and were not informed of its existence at the time. (Compl. 26.) President Judge Schmehl granted Wendy Pugliese's petition and issued an order marking the judgment against Peter Pugliese in the Foreclosure Action satisfied on June 5, 2009. (Compl. ¶ 27.) Plaintiffs were not informed by defendants of this order. (*Id.*)

Despite the initial judgment against Peter Pugliese in the Foreclosure Action having been marked satisfied, a default judgment was entered against him in the Deficiency Action for $295,726.05 on July 13, 2009. (Compl. 28.) Sheriff's levies were served against Peter Pugliese for all his property and business on July 27, 2009. (Compl. ¶ 29.) Peter Pugliese then filed a petition to strike the default judgment, arguing that the original judgment had already been marked satisfied pursuant to President Judge Schmehl's order. (Compl. ¶ 30.) On October 4, 2009, Peter Pugliese's petition was granted and the Deficiency Action was dismissed.[3] (Compl.

---

[2]Wendy Pugliese and Peter Pugliese were engaged in a divorce action during the pendency of the foreclosure action, and Wendy Pugliese had been assigned certain of Peter Pugliese's rights. (Opinion 2, 6.)

[3]Nothing in the record suggests that plaintiffs appealed this dismissal.

3

¶ 32.)

On October 14, 2009, plaintiffs moved to strike or open the order of June 5, 2009 marking the judgment against Peter Pugliese satisfied. (Opinion 3.) Judge Schmehl denied plaintiffs' motion on December 3, 2009, and on April 1, 2010 recommended that plaintiffs' appeal to the Pennsylvania Superior Court be denied.[4] (Opinion 3-4, 8.)

Plaintiffs' filed this malpractice suit against the Squire Firm and Freedman on April 1, 2010. Defendants have now moved to dismiss for failure to state a claim.

## II. Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* at 1949. In evaluating a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); see also *Iqbal*, 129 S. Ct. at 1949

---

[4]It appears that plaintiffs voluntarily discontinued their appeal as of July 1, 2010. Docket Sheet at 2, *IB Property Holdings v. Pugliese*, No. 21 MDA 2010 (Pa. Super. Ct.), *available at* http://ujsportal.pacourts.us/DocketSheets/SuperiorCourtReport.aspx?docketNumber=21 MDA 2010 (lasted updated July 24, 2010).

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs incorrectly claim that a movant under Rule 12(b)(6) must demonstrate that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Resp.") 6.) As the Third Circuit recognized in *Fowler*, the "no set of facts" standard did not survive *Iqbal*. *Fowler*, 578 F.3d at 210 ("*Iqbal* . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

## III. Discussion

Defendants challenge plaintiffs' five counts on different grounds, and I will address each in turn. For the reasons set forth below I will deny defendants' motion in full.

### A  Counts I & II - Breach of Fiduciary Duty

Defendants argue that plaintiffs' breach of fiduciary duty claims against the Squire Firm (Count I) and Freedman (Count II) should be dismissed because a breach of fiduciary duty claim arises where a lawyer is disloyal to the client, and plaintiff has pleaded factual matter that supports at most a breach of defendants' duty of care. (Defs.' Mem. in Support of Mot. to Dismiss ("Defs.' Mot.") 6.[5]) Plaintiffs respond that they have pleaded both breach of fiduciary duty and negligent malpractice claims, presumably intending that each of Counts I and II

---

[5] Defendants failed to paginate their memorandum; all references assume the memorandum begins at page 1.

5

encapsulate both theories of negligence and disloyalty. (Pls.' Resp. 3, 8.) No rule requires dismissal of a claim because multiple theories of liability are asserted in a single count, so I will examine the sufficiency of the well-pleaded facts in the complaint with respect to the elements of both types of claim.

*i. Negligence*

Defendants do not directly challenge the sufficiency of the complaint with respect to a claim of negligence, likely because neither "negligence" nor "malpractice" are explicitly indicated by a heading. Regardless of the headings used, however, plaintiffs have stated a claim for negligence-based malpractice.

Under Pennsylvania law,[6] a legal malpractice claim sounding in negligence requires the plaintiff to prove: (1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff. *Kituskie v. Corbman*, 714 A.2d 1027, 1029 (Pa. 1998). The first element does not appear to be in dispute, and plaintiffs clearly have pleaded the second,[7] but defendants assert that plaintiffs have failed to plead causation because they do not specifically allege that they would have succeeded in the underlying litigation in the absence of any breach of duty by defendants.[8] (Defs.' Mot. 8-9.)

---

[6] The parties do not dispute the application of Pennsylvania law.

[7] Indeed, defendants attack plaintiffs' breach of fiduciary duty claim on the grounds that plaintiffs have pleaded only a failure to exercise ordinary skill rather than a breach of the duty of loyalty. (Defs.' Mot. 6-7.)

[8] Defendants make this argument in challenging plaintiffs' breach of contract claim, but it is equally applicable to plaintiffs' negligence claim.

No doubt, to recover the lost deficiency that plaintiffs claim as damages they must show causation by proving that they would have recovered it in the underlying litigation but for defendants' negligence.[9] *See Kituskie*, 714 A.2d at 1030 ("[A] legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case."). At the pleading stage, however, I must ask whether plaintiffs have pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plaintiffs have alleged that the Property was sold well below market value; Peter Pugliese owed plaintiffs "in excess of $377,499.00" as a deficiency; plaintiffs instructed defendants to pursue the resulting deficiency; defendants failed to file a petition to fix fair value, which is required in order to pursue a deficiency; and as a result of defendants' "careless, negligent and reckless conduct" plaintiffs suffered damages. (Compl. ¶ 20-21, 24, 36, 43.) Plaintiffs' allegations sufficiently plead the element of causation, and thus plaintiffs' have properly stated a claim for negligent malpractice.

    *ii. Disloyalty*

Defendants argue that a breach of fiduciary duty claim against an attorney requires allegations of disloyalty, not mere negligence, and that plaintiffs have therefore failed to state a claim for breach of fiduciary duty because the complaint does not assert that defendants' failure

---

[9]Plaintiffs oddly assert in their response that they do not need to prove a case within a case because "the matter in which the defendants represented the plaintiffs did not involve any underlying litigation." (Pls.' Resp. 9 n.2.) This does not appear to be the case; according to the complaint, plaintiffs engaged in extensive litigation in an attempt to recover a deficiency and were unsuccessful because of defendants' negligence.

to file a petition to fix fair value was intentional, or caused by divided loyalty. (Defs.' Mot. 6-7.) Even assuming that defendants are correct that the plaintiffs' allegations do not suggest that the failure to file the petition to fix fair value was anything more than negligent, plaintiffs have stated a claim based on a theory of disloyalty because plaintiffs allege subsequent conduct by defendants that supports such a theory.

In Pennsylvania, "[a] cause of action may be maintained against an attorney for breach of his or her fiduciary duty to a client." *Gorski v. Smith*, 812 A.2d 683, 711 (Pa. Super. Ct. 2002). "[T]he relationship between the attorney and his client is a fiduciary relationship." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1287 (Pa. 1992). "[S]uch duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." *Id.* at 1283. "[A]n attorney who undertakes representation of a client owes that client both a duty of competent representation and the highest duty of honesty, fidelity, and confidentiality." *Capital Care Corp. v. Hunt*, 847 A.2d 75, 84 (Pa. Super. Ct. 2004).

In the context of Pennsylvania legal malpractice, "breach of fiduciary duty" has often been understood by courts to describe a claim for breach of an attorney's duty of loyalty, rather than an attorney's duty of care. *See*, *e.g.*, *Meyers v. Sudfeld*, No. 05-cv-2970, 2006 U.S. Dist. LEXIS 6421, at *16 (E.D. Pa. 2006) (requiring "that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff" for a breach of fiduciary duty claim against an attorney). The precise legal standard in Pennsylvania for establishing a breach of fiduciary duty in this sense has not been as clearly articulated by the state's highest court as that for negligent malpractice, and district courts have turned to the Pennsylvania Suggested Standard Civil Jury Instructions to articulate the elements of such a claim. *See*, *e.g.*, *McDermott v. Party*

*City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998) (citing Pa. S.S.J.I. § 4.16 (1991)); *Meyers*, 2006 U.S. Dist. LEXIS 6421, at *16 (citing *McDermott*, 11 F. Supp. 2d at 626 n.18). A panel of the Third Circuit appears to have tacitly endorsed this approach. *See Dinger v. Allfirst Financial, Inc.*, 82 Fed. App'x 261, 265 (3d Cir. 2003) (quoting the breach of fiduciary duty standard used in *McDermott*, 11 F. Supp. 2d at 626 n.18) (non-precedential). In the absence of contrary authority, I will apply the same standard at this stage of the proceeding.[10]

Thus, establishing a breach of fiduciary duty requires plaintiff to prove: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's injuries." *Meyers*, 2006 U.S. Dist. LEXIS 6421, at *16 (quoting *McDermott*, 11 F. Supp. 2d at 626 n.18); *see also* Pa. S.S.J.I. § 4.16.[11]

Plaintiffs do not appear to assert that defendants failed to file the petition intentionally, or because of divided loyalty. However, plaintiffs assert that defendants attempted to hide their lapse by failing to inform plaintiffs that they had missed the deadline for filing a petition to fix fair value, informing President Judge Schmehl that they did not object to marking the judgment

---

[10] Plaintiffs and defendants appear to agree that this is the applicable standard. (*See* Pls.' Resp. 8-9; Defs.' Mot. 6.)

[11] The current version of § 4.16 also contains an alternative standard that requires that the defendant have "negligently or intentionally failed to use reasonable care in carrying out [his or her] duties." Pa. S.S.J.I. § 4.16. It is not necessary to consider this formulation because it would be indistinguishable from a simple negligence claim and, as explained above, I have already concluded that plaintiffs have stated a claim for negligent malpractice. I note, however, that § 4.16's alternative standard supports plaintiffs' argument that they have pleaded theories of both negligence and disloyalty despite using only the label "breach of fiduciary duty."

9

satisfied without consulting plaintiffs, failing to inform plaintiffs that the judgment was marked satisfied, and continuing to press the deficiency claim despite knowing it was unmeritorious. (Compl. 24-27; Pls.' Resp. 3.) These subsequent acts may constitute a failure "to act in good faith and solely for the benefit of plaintiff," *Meyers*, 2006 U.S. Dist. LEXIS 6421, at *16.

Of course, to recover on the theory that defendants' acts subsequent to their failure to file a petition to fix fair value were disloyal, plaintiffs will have to prove that such actions were "a real factor in bring[ing] about plaintiff[s'] injuries." *Id.* If there was no way to recover the deficiency once the original mistake was made, plaintiffs may be unable to recover the lost deficiency as damages under this theory of liability. At this stage, however, plaintiffs have sufficiently pleaded their claim.

### B. Count IV - Breach of Contract

Defendants assert that plaintiffs have failed to plead a contract-based malpractice claim because they do not properly allege harm resulting from defendants' failure to file a petition to fix fair value. (Def.'s Mot. 8.) More specifically, defendants assert that plaintiffs have failed to allege that they would have been successful in pursuing a deficiency against Peter Pugliese if defendants had properly filed a petition to fix fair value. (*Id.* at 9.) Defendants' argument is unavailing.

Although there is some degree of confusion in the relevant caselaw regarding the extent to which harm and causation are required elements of a contract-based malpractice claim,[12] to the

---

[12] Authority has diverged on the required elements of a contract-based claim for legal malpractice since the Pennsylvania Supreme Court decided *Bailey v. Tucker*, 621 A.2d 108 (Pa. 1993). *See Steiner v. Markel*, 968 A.2d 1253, 1262 (Pa. 2009) (Saylor, J., dissenting) (noting that

10

extent they are required plaintiff has met the burden of pleading them for the reasons discussed above with respect to plaintiffs' negligence claims.

### C. Count III - Negligent Supervision

Defendants attack plaintiffs' negligent supervision claim against the Squire Firm, arguing that plaintiffs' have failed to allege that Freedman or any other attorneys involved in the underlying matter acted outside the scope of their employment when engaged in the conduct subject to complaint. (Defs.' Mot. 7-8.) Defendants' attack fails, however, because an employer may be held liable for its own negligent supervision irrespective of the liability of the relevant employee. Moreover, even if a negligent supervision claim required that the relevant employee have acted outside the scope of employment, plaintiffs negligent supervision claim can stand as an alternative basis for liability.

Defendants rely on the Restatement (Second) of Torts § 317 (1965), and Pennsylvania caselaw applying it, for the proposition that a negligent supervision claim can only be maintained against an employer where the relevant employee's negligent acts were committed outside the

---

"the discussion of a contract-based cause in *Bailey v. Tucker* suggests the elements of tort- and contract-based causes of action in this setting overlap substantially, if not completely," whereas federal courts have required averment of a breach of a particular contractual provision or a failure to follow specific client instructions for contract-based claims (citation omitted)). *Bailey* limited the damages available in a contract-based malpractice claim to fees paid and statutory interest, *see Bailey*, 621 A.2d at 115, but courts have reached different conclusions as to whether this limitation should apply only in the criminal context, as in *Bailey*. *Compare Stacey v. City of Hermitage*, No. 2:02-cv-1911, 2008 U.S. Dist. LEXIS 29359, at *20-*21 n.6 ("Assuming, arguendo, that the assumpsit claim recognized in *Bailey* applies in the civil context . . . damages under such a claim are limited to the amount paid."), *and ASTech International v. Husick*, 676 F. Supp. 2d 389, 399-401 (recognizing the application of the *Bailey* standard in the civil context, but requiring proof of actual loss, *i.e.*, that the underlying result would have differed but for the attorney's breach).

scope of employment. (Defs.' Mot. 7-8.) Section 317 is not, however, the only potential authority on the liability of an employer for failing to properly supervise its employees. The Restatement (Second) of Agency § 213 (1958) has also been applied by Pennsylvania courts to impose liability on corporations for negligent supervision and hiring. *See*, *e.g.*, *Heller v. Patwil Homes Inc.*, 713 A.2d 105, 107-09 (Pa. Super. Ct. 1998) (analyzing claims for negligent hiring and supervision under § 213).

Unlike Restatement (Second) of Torts § 317, Restatement (Second) of Agency § 213 does not require that employees act outside the scope of their employment, and it contemplates potential concurrent liability for employers under both § 213 and *respondeat superior*. *See* Restatement (Second) of Agency § 213 cmt. h (1958) ("In a given case the employer may be liable both on the ground that he was personally negligent and on the ground that the conduct was within the scope of employment."). Moreover, the Supreme Court of Pennsylvania has recognized that an employer may be independently liable for negligent instructions and directions, irrespective of the relevant employee's liability. *See Pryor v. Chambersburg Oil & Gas Co.*, 103 A.2d 425, 429 (Pa. 1954) (citing Restatement (Second) of Agency § 213 cmt. h). Thus plaintiffs' negligent supervision claim is not deficient for failing to allege that Freedman acted outside the scope of his employment.

Even if defendants are correct that a negligent supervision claim requires that the relevant employees have acted outside the scope of their employment, plaintiffs may offer alternative theories of liability. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 189 (3d Cir. 1999) ("[P]laintiff may plead in the alternative, and our caselaw finds no difficulty with pairing the two claims in one complaint."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims

or defenses as it has, regardless of consistency."). To the extent it was not initially clear to defendants that this claim was potentially an alternative theory of liability, given plaintiffs' response defendants are now fairly on notice and may respond accordingly in their answer. (Pls.' Resp. 4 ("The allegations of fraud, malfeasance and subterfuge set forth against both defendants were either implicitly done with the consent of [the Squire Firm], or intentional acts committed by Freedman outside the scope of his employment.").)

Whether as an alternative or an independent theory of liability, plaintiffs have pleaded sufficient facts to support their claim for negligent supervision.

. **D.** **Count V - Punitive Damages**

Defendants argue that plaintiffs' claim for punitive damages should be dismissed because the complaint alleges facts that, at most, support a finding of ordinary negligence. Plaintiffs have, however, alleged sufficient facts to support their request for punitive damages.

Under Pennsylvania law, "[p]unitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either 'the defendant's evil motive or his reckless indifference to the rights of others.'" *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (quoting *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1096 (Pa. 1985)). A punitive damages claim "must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005) (citing *Martin*, 494 at 1097-98).

Defendants rely on *McCartney v. Dunn & Conner, Inc.*, 563 A.2d 525 (Pa. Super. Ct. 1989) to argue that plaintiffs have alleged facts that, at most, support a finding of ordinary negligence that does not support an award of punitive damages. However, *McCartney* was an appeal from a grant of summary judgment after discovery. Moreover, the allegations deemed insufficient in *McCartney*[13] did not involve the kind of conscious wrongdoing plaintiffs allege in this case. Here, plaintiffs have not only alleged that defendants failed to make a necessary filing to prosecute their claim, but also that defendants subsequently engaged in a pattern of deliberate conduct that concealed and exacerbated that original mistake. (*See* Compl. ¶ 67 ("Plaintiffs . . . suffered injuries, damages and losses as a direct and proximate result of . . . the Defendants' efforts to lie, hide and obscure [their] initial malpractice . . . .").) Even if the original mistake alone is insufficient, plaintiffs' allegations as a whole provide sufficient factual content to support a plausible claim for punitive damages.

## IV.     Conclusion

For the foregoing reasons I conclude that plaintiffs have properly pleaded each of their claims, and I will deny defendants' motion to dismiss.

---

[13]The allegations comprised "[a defendant's] advice that plaintiff should proceed with the lawsuit despite his knowledge of plaintiff's precarious financial situation, [that defendant's] lack of preparation of the case until two weeks before trial and the defendant's involvement in litigation adverse to the plaintiff's radiology group at the same time that the defendants represented plaintiff." *McCartney*, 563 A.2d at 529 n.1.