IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| BAYVIEW LOAN SERVICING, LLC *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-1451 |
| | : | |
| LAW FIRM OF RICHARD M. SQUIRE & ASSOCIATES, LLC *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.  May 11, 2011

      Plaintiffs, Bayview Loan Servicing, LLC ("Bayview") and its wholly owned subsidiary IB Property Holdings, LLC ("IB Property"), bring this legal-malpractice action against defendants, the law firm of Richard M. Squire & Associates, LLC (the "Squire Firm") and its employee M. Troy Freedman ("Freedman"). Plaintiffs claim that they lost the right to collect a deficiency from Peter Pugliese, a mortgagor in default, because defendants—who represented plaintiffs in a foreclosure action against Mr. Pugliese and a subsequent action to collect the deficiency—failed to file a petition to fix the fair value of the relevant property within six months of the foreclosure sale, as required under Pennsylvania law.

      Plaintiffs have filed a motion for partial summary judgment under Federal Rule of Civil Procedure 56, seeking summary judgment on Counts I and II (breach of fiduciary duty), and Count IV (breach of contract). For the reasons explained below I will deny plaintiffs' motion.

I.  **Factual and Procedural Background**[1]

In November 2006, Peter Pugliese borrowed $262,500.00 from MetWest Commercial Lender, Inc. ("MetWest"), evidenced by a promissory note and secured by a mortgage on certain real property located in Pennsylvania (the "Property") (Compl. ¶¶ 10-11; Defs.' Mem. in Support of Resp. to Pls.' Mot. Summ. J. ("Defs.' Mem.") 4; *see also* Defs.' Mem. Ex. B, Ex. 1 (promissory note); Defs.' Mem. Ex. B, Ex. 2 ("Mortgage").) Mr. Pugliese also obtained a liability and casualty insurance policy on the Property, listing MetWest as an additional insured, and pledged the proceeds of that insurance as collateral for his debt to MetWest. (Compl. ¶ 14; Defs.' Mem. Ex. B ("Insurance Action Complaint") ¶¶ 13-17; Mortgage § 3.3.) The note and mortgage were assigned to Bayview in July 2007, and Bayview later assigned them to IB Property. (Compl. ¶ 13; Defs.' Mem. 4.)[2]

---

[1] Plaintiffs have offered little in the way of evidence or even recitation of the facts underlying their litigation against Mr. Pugliese, in support of their motion. Defendants do not, however, appear to dispute plaintiffs' core allegations regarding the note and mortgage at issue; in fact, in their response defendants mostly refer to the complaint in describing the factual background of the case, and they include some relevant documentation as exhibits. I need not decide whether each of the facts underlying plaintiffs' various actions against Mr. Pugliese is beyond dispute, because I conclude that plaintiffs are not entitled to summary judgment for the reasons explained below. For convenience and narrative clarity, I describe the pertinent facts as best disclosed by the record.

[2] The complaint alleges that the note and mortgage were assigned to IB Property on December 30, 2008 (Compl. ¶ 13), but the record contains contradictory information on this point. For example, according to the complaint, IB Property obtained a judgment against Mr. Pugliese and caused the Property to be sold by sheriff's sale on September 5, 2008, months before the alleged assignment. (Compl. ¶ 18.) The complaint also alleges that IB Property purchased the Property at the sheriff's sale and sold it to a third party on December 8, 2008. And Freedman stated at his deposition that the mortgage was assigned to IB Property *before* the September 2008 sheriff's sale. (Pls.' Mem. in Supp. of Mot. Summ. J. ("Pls.' Mem.") Ex. A ("Freedman Dep.") 80:13-18.) It may be that the complaint mistakenly states "2008" instead of "2007." This issue will require resolution at or before trial because defendants assert that Bayview is not a proper plaintiff in this case (Defs.' Mem. 3.)

2

On March 19, 2007, a fire damaged the Property (Freedman Dep. 19:10-14), and Mr. Pugliese ceased making payments on the note beginning July 1, 2007 (Compl. ¶ 17.) The Squire Firm represented IB Property in the ensuing foreclosure action against Mr. Pugliese (the "Foreclosure Action"), before the Court of Common Pleas of Berks County. (Answer ¶¶ 18-19.) The Squire Firm successfully obtained an *in rem* judgment in favor of IB Property and against Peter Pugliese in the amount of $287,992.56 in the Foreclosure Action on January 24, 2008.[3] (Compl. ¶ 18; Certificate of Merit Ex. A ("Opinion") at 2; Defs.' Mem. 4.) IB Property purchased the Property at a sheriff's sale on September 5, 2008. (Compl. ¶¶ 18, 20; *see also* Freedman Dep. 33:11-20.) IB Property subsequently sold the Property to a third party on December 8, 2008. (Compl. ¶ 20; *see also* Freedman Dep. 39:9-14.)

On December 4, 2008, plaintiffs instructed defendants to seek a deficiency from Mr. Pugliese. (Compl. ¶ 21, Answer ¶ 21.) Defendants, on behalf of plaintiffs, filed a third lawsuit against Pugliese on March 26, 2009, in the Berks County Court of Common Pleas, seeking the alleged deficiency resulting from the foreclosure sale (the "Deficiency Action"). (Compl. ¶ 25; Answer ¶ 25.) However, defendants had failed to file a petition to fix the fair value of the Property within six months of the sheriff's sale, as required under Pennsylvania law in order to pursue a deficiency, *see* 42 Pa. Cons. Stat. § 8103(a)-(d). (Pls.' Mem. Ex. B ("Defs.' Admis.") ¶ 2.)

On April 27, 2009, Mr. Pugliese's wife Wendy—now his former wife—filed a petition in

---

[3] On June 2, 2008, the Squire Firm filed another suit in the Court of Common Pleas of Berks County on behalf of Bayview against Mr. Pugliese, a corporation controlled at the time by Mr. Pugliese, and the relevant insurance underwriter, to recover the proceeds of Mr. Pugliese's insurance policy on the Property (the "Insurance Action"). (Defs.' Mem. 4-5; *see also* Insurance Action Complaint.) This action is still pending. (Defs.' Mem. 14.)

the Berks County Court of Common Pleas to mark the judgment against Mr. Pugliese in the Foreclosure Action satisfied, released, and discharged, based on plaintiffs' failure to file the required petition to fix fair value.[4] (Opinion 3; Defs.' Mem. Ex. D ("Wendy Pugliese Petition").) On May 7, 2009, Freedman sent a letter to President Judge Schmehl, the presiding judge in that action, advising that Bayview had no objection to Wendy Pugliese's petition. (Pls.' Mem. Ex. C (letter from Freedman to President Judge Schmehl); Compl. ¶ 26; Opinion 7-8.) Plaintiffs did not authorize this letter and were not informed of its existence at the time. (Compl. ¶ 26; Answer ¶ 26; Defs.' Admis. ¶¶ 5-6, 8.) President Judge Schmehl granted Wendy Pugliese's petition and issued an order marking the judgment against Mr. Pugliese in the Foreclosure Action satisfied on June 5, 2009. (Pls.' Mem. Ex. D (President Judge Schmehl's order).) Plaintiffs were not informed by defendants of this order until, at the earliest, August 2009. (Freedman Dep. 97:18-98:10; *see also* Answer ¶ 27; Defs.' Admis. ¶ 7.)

Despite the initial judgment against Peter Pugliese in the Foreclosure Action having been marked satisfied, plaintiffs were initially awarded a default judgment against him in the Deficiency Action for $295,726.05 on July 13, 2009. (Compl. 28; Answer ¶ 28.) Mr. Pugliese petitioned to strike the default judgment, however, because the original judgment in the Foreclosure Action had already been marked satisfied. (Compl. ¶ 30.) On October 4, 2009, Mr. Pugliese's petition was granted and the Deficiency Action was dismissed.[5] (Compl. ¶ 32; Answer ¶ 32.)

---

[4] Wendy Pugliese and Peter Pugliese were engaged in a divorce action at the time, and Wendy Pugliese claimed an interest in the Property. (Opinion 2, 6; Wendy Pugliese Petition ¶¶ 2-5.)

[5] There is no evidence that plaintiffs appealed this dismissal.

On October 14, 2009, plaintiffs—apparently with new counsel (*see* Freedman Dep. 76:16-77:13)—moved to strike or open the order of June 5, 2009 marking the judgment against Mr. Pugliese satisfied. (Opinion 3; Freedman Dep. 76:6-15.) President Judge Schmehl denied plaintiffs' motion on December 3, 2009, and on April 1, 2010, recommended that plaintiffs' appeal to the Pennsylvania Superior Court be denied. (Opinion 3-4, 8.) That appeal was later withdrawn. (Freedman Dep. 93:6-23.)

Plaintiffs filed this malpractice suit against the Squire Firm and Freedman on April 1, 2010. Defendants moved to dismiss the complaint for failure to state a claim, and I denied that motion on December 13, 2010. *See Bayview Loan Servicing, LLC v. Law Firm of Richard M. Squire & Assocs., LLC*, No. 10-1451, 2010 U.S. Dist. LEXIS 132108, at *1 (E.D. Pa. Dec. 13, 2010). Before the court is plaintiffs' motion for partial summary judgment.

**II.     Legal Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party moving for summary judgment has met its initial burden, the nonmoving party may not rely merely on bare assertions, conclusory allegations, or suspicions, *see Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), but instead must present "specific facts showing that there is a *genuine issue for trial*," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (internal quotation marks omitted). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007). For elements on which the nonmoving party bears the burden of production, the party must show more than "[t]he mere existence of a scintilla of evidence," but instead must present concrete evidence supporting each essential element of its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

When a court evaluates a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed." *Anderson*, 477 U.S. at 255. Furthermore, "[a]ll justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy*, 90 F.3d at 744 (internal quotation marks omitted) (omission in original). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### III. Discussion

Plaintiffs move for summary judgment only as to Counts I and II (breach of fiduciary duty) and Count IV (breach of contract). Because there remain disputed issues of material fact with respect to whether plaintiffs suffered actual loss as a result of the failure of defendants to file a petition to fix fair value, and whether defendants acted disloyally after that failure, I will deny plaintiffs' motion.

#### A. Count IV - Breach of Contract

Plaintiffs claim that defendants' failure to file a petition to fix the fair value of the Property "results in per se malpractice, a breach-of-contract claim, and immediately establishes liquidated damages by virtue of the deficiency judgment which was waived by defendants' malpractice. The deficiency is the difference between the amount owed on the mortgage and the amount obtained from the sheriff's sale, which is a sum certain." (Pls.' Reply Br. in Supp. of Mot. Summ. J. ("Pls.' Reply") 2.) There is no dispute that defendants were required to file a petition to fix the fair value of the Property and failed to do so. (*See*, *e.g.*, Defs.' Admis. ¶ 2; Freedman Dep. 36:4-16, 75:13-17.). But plaintiffs are not entitled to summary judgment on this claim, because material facts remain in dispute with respect to whether, and to what extent, plaintiff suffered actual loss because of defendants' error.

As discussed in the court's previous memorandum, under Pennsylvania law some of the distinctions between contract- and tort-based legal-malpractice claims arising from civil representation remain nebulous. *See Bayview*, 2010 U.S. Dist. LEXIS 132108, at *16 n.12. But nothing in the relevant caselaw suggests that plaintiffs may recover the deficiency that they claim

was lost because of defendants' error without proving that they would have achieved success in the Deficiency Action if not for defendants' failure to file a petition to fix fair value.

"[W]hen it is alleged that an attorney has breached his professional obligations to his client, an essential element of the cause of action, whether the action be denominated in assumpsit or trespass, is proof of actual loss." *Rizzo v. Haines*, 555 A.2d 58, 68 (Pa. 1989) (quoting *Duke & Co. v. Anderson*, 418 A.2d 613, 617 (Pa. Super. Ct. 1980)). Plaintiffs must prove actual loss by demonstrating that they would have succeeded in the underlying case; *i.e.*, they must show that they would have recovered a judgment against Mr. Pugliese but for defendants' failure to file a petition to fix fair value. *See Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998) ("It is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged . . . was negligent."). Plaintiffs have not done so. Instead, plaintiffs offer little more than assertions that the damages are "liquidated" in the amount of the lost deficiency. (*See* Pls.' Reply 2.) Plaintiffs cannot establish harm merely by claiming to have done so. Crucially, plaintiffs have offered no evidence at all to establish the fair value of the Property, which would have been the purpose of the petition to fix the fair value of the Property if one had been filed. Contrary to plaintiffs' assertion, the deficiency to which they may be entitled is not the "difference between the amount owed on the mortgage and the amount obtained from the sheriff's sale" (*Id.*).[6] Rather, they may be entitled to the difference between the amount owed on the mortgage and the fair market value of the Property—with statutory adjustments—which would have been established

---

[6] IB Property appears to have purchased the property for $5,000. (*See* Opinion 3.) Plaintiffs point to no evidence of the amount for which the property was subsequently sold.

by the Court of Common Pleas if the necessary petition had been filed. *See* 42 Pa. Cons. Stat. § 8103(c)(5).[7]

Moreover, defendants assert that any judgment against Mr. Pugliese would have been uncollectible because of his inability to pay. (Answer 9; Defs.' Mem. 12-13.) This is an affirmative defense as to which defendants bear the burden of proof. *Kituskie*, 714 A.2d at 1032. Defendants have offered an affidavit of Mr. Pugliese in which he asserts that he did not, and does not, have the financial capacity to pay a deficiency judgment. (Defs.' Supplemental Resp. in Opp'n to Pls.' Mot. Summ J. Ex. A ("Pugliese Aff.") ¶ 11.) Mr. Pugliese describes his limited resources in some detail and attributes his financial condition, at least in part, to his divorce. (*See* Pugliese Aff. ¶¶ 12-22.) This affidavit is sufficient to give rise to a genuine issue of fact regarding collectibility.

### B. Counts I and II - Breach of Fiduciary Duty

In the complaint and plaintiffs' response to defendants' earlier motion to dismiss, it appeared that plaintiffs were asserting claims based on negligence *and* disloyalty under the rubric "breach of fiduciary duty," targeting defendants' failure to file a petition to fix fair value and their conduct following that failure, respectively. In moving for summary judgment on Counts I and II, however, plaintiffs focus their argument largely on defendants' conduct *after* they failed

---

[7] The Superior Court of Pennsylvania has stricken the 2005 amendments to section 8103 after finding that they violated Pennsylvania's single subject rule. *See Com v. Neiman*, 5 A.3d 353, 359 (Pa. Super. Ct. 2010). Those 2005 amendments are not, however, relevant here.

to file the petition.[8] (*See, e.g.*, Pls.' Mem. 9 ("The complaint also alleges counts in breach of fiduciary duty against both defendants based on the subsequent compounding of the malpractice error . . . .").) Plaintiffs argue that, after failing to file a petition to fix fair value and thus forfeiting the deficiency allegedly owed to plaintiffs, defendants compounded the error by covering up their failure, continuing to pursue the abandoned deficiency, and accumulating needless legal fees. (*See* Pls.' Mem. 13.) But plaintiffs have not shown the absence of a genuine issue of material fact as to these claims.[9]

To establish a breach of fiduciary duty a plaintiff must prove "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries." *Meyers v. Sudfeld*, No. 05-2970, 2006 U.S. Dist. LEXIS 6421, at *16 (E.D. Pa. Feb. 21, 2006) (quoting *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)); *see also* Pa. S.S.J.I. § 4.16.[10]

---

[8] To the extent plaintiffs still address their breach-of-fiduciary-duty claims to defendants' failure to file a petition to fix fair value, they are not entitled to summary judgment for the reasons explained above with respect to plaintiffs' breach-of-contract claim.

[9] Plaintiffs also argue that their claim against the Squire Firm for breach of fiduciary duty is strengthened by Richard Squire's "lack of knowledge concerning the subject matter of this lawsuit." (Pls.' Supplemental Reply Br. in Supp. of Mot. Summ. J. 3.) Plaintiffs do not, however, explain why the Squire Firm must have breached its fiduciary duty to plaintiffs simply because Richard Squire, the president and sole owner of the Squire Firm, was unaware of the details of this particular case or plaintiffs' litigation against Mr. Pugliese. And, plaintiffs have not requested summary judgment on their claim for negligent supervision.

[10] As mentioned in the court's prior opinion, Pa. S.S.J.I. § 4.16 also contains an alternative negligence-based standard. Although plaintiffs initially note that the court's prior opinion supports their "argument that they have pleaded theories of both negligence and

There is no explanation apparent in the evidence of record as to why defendants failed to promptly inform plaintiffs of Freedman's May 2009 letter to President Judge Schmehl expressing no objections to Wendy Pugliese's petition, and waited at least two months to inform plaintiffs that an order had been entered marking their judgment in the Foreclosure Action satisfied; there is also little evidence of the basis for defendants' opinion that they might nonetheless recover the deficiency. However, there also is no direct evidence that they did not act in good faith and for the benefit of plaintiffs. Plaintiffs would have the court infer, from defendants' continuation of efforts to recover an apparently forfeited deficiency and their delay in notifying plaintiffs of President Judge Schmehl's June 2009 order, that defendants hid their mistake and needlessly generated fees. But at the summary-judgment stage I may not choose which reasonable inferences to draw; instead, I must draw all justifiable inferences in favor of the nonmoving party, *Anderson*, 477 U.S. at 255.

Freedman stated in his deposition testimony that he believed a recovery was still viable even after the deadline to file a petition to fix fair value had passed. (Freedman Dep. 44:4-45:2; 99:18-23.) It is not entirely clear what, if any, basis Freedman had for that belief,[11] but plaintiffs

---

disloyalty despite using only the label 'breach of fiduciary duty'" (Pls.' Mem. 11-12), plaintiffs largely confine their argument for summary judgment on Counts I and II to the standard set forth above. (*See id.* at 12-13.)

[11] Freedman states in his deposition testimony that defendants believed they might be able to recover the default judgment they obtained against Mr. Pugliese in the Deficiency Action, despite the Foreclosure Action judgment having been marked satisfied. (Freedman Dep. 44:12-19.) He could not have reached that conclusion, however, until that default judgment was obtained on July 13, 2009, almost one month after Wendy Pugliese's petition was granted. Freedman also testified, however, that defendants believed they could recover in the Insurance Action despite failing to file a petition to fix fair value. (*Id.* at 44:20-45:2.) Defendants still maintain that the Insurance Action may be successful. (Defs.' Mem. 14.) What legal reasoning, if any, led to these conclusions is not clear from the record because the only evidence before the

bear the burden of proving, by a preponderance of the evidence, that defendants needlessly generated fees while concealing their malpractice. They have not carried that burden at this stage because they have not pointed to evidence that would necessarily compel a reasonable juror to find that defendants did not have a good faith belief that recovery remained possible.[12]

IV.     **Conclusion**

Because plaintiffs have not demonstrated the absence of a genuine issue of material fact with respect to Counts I, II, and IV, I will deny plaintiffs' motion for partial summary judgment. An appropriate order follows.

---

court that sheds any significant light on the Insurance Action is Freedman's limited testimony on that subject, and the Insurance Action complaint which defendants submitted as an exhibit.

[12] I note that, despite describing defendants' pursuit of a deficiency after failing to file a petition to fix fair value as "frivolous" (Pls.' Mot. for Partial Summ. J. ¶ 10), after replacing defendants as their counsel plaintiffs moved to strike or open the order marking their judgment satisfied, and initially appealed the denial of that order, advancing a number of legal theories (*see* Opinion 3-5.)